STATE of Wisconsin EX REL. Antoinette ROBINSON and Grant Gullickson, Petitioners-Appellants,

Jim SCHERNECKER, Appellant,

v.

TOWN OF BRISTOL, Gerald H. Derr and Kay Ringelstetter, Respondents-Respondents,

DANE COUNTY c/o County Treasurer David Gawenda, Necessary-Party.

Court of Appeals

*No. 02–1427. Submitted on briefs December 9, 2002.—Decided April 10, 2003.*

2003 WI App 97

(Also reported in 667 N.W.2d 14.)

319

320

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Jim Schernecker, Action Law, S.C.*, Sun Prairie.

On behalf of the respondents-respondents, the cause was submitted on the briefs of *Daniel G. Jardine* and *Matthew M. Beier, Murphy Desmond, S.C.*; and *Mark B. Hazelbaker*, Madison.

Before Vergeront, P.J., Roggensack and Lundsten, JJ.

¶ 1. VERGERONT, P.J. Antoinette Robinson and Grant Gullickson[1] appeal the judgment dismissing their claim that the assessment for the cost of removing gravel and dirt and for legal fees levied by the Town of Bristol on the Gullickson property was unlawful and void. They and their counsel[2] also appeal the trial court's determination that the claim was frivolous because it was time-barred by WIS. STAT. § 893.72 (2001–02)[3] and the award of attorney fees under WIS. STAT. § 814.025(3)(b) for bringing the claim and for moving for reconsideration.

¶ 2. We agree with the trial court that the claim was time-barred by WIS. STAT. § 893.72 insofar as it challenged the assessment for the cost of removing gravel and dirt. However, we conclude the Town was without power to make an assessment for the legal fees and therefore the one-year limitation in § 893.72 does not apply. Accordingly, we reverse the judgment dismissing the claim and the award of attorney fees under

---

[1] Antoinette Robinson is an elector, resident, and landowner of the Town of Bristol. Grant Gullickson is an elector, resident, landowner, and member of the board of supervisors of the Town of Bristol. We refer to them collectively as "petitioners." The petition alleges that Grant Gullickson has an interest in the Gullickson farm property as heir to Clayton Gullickson, who owned the property but is now deceased. When we refer to "Gullickson," we mean Grant Gullickson; when we refer to "the Gullicksons," we mean Clayton or any member of his family. We refer to all respondents as "the Town."

[2] The notice of appeal states that Jim Schernecker, individually, is also an appellant. He is attorney for petitioners.

[3] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

WIS. STAT. § 814.025(3)(b) for bringing the claim. We agree with the trial court that the arguments made in the motion for reconsideration were frivolous, and we therefore affirm the court's award of attorney fees for that motion under WIS. STAT. § 802.05.

¶ 3. Petitioners and their counsel also appeal a protective order entered after the court determined counsel had violated SCR 20:4.2, which prohibits certain communications with a person represented by counsel, and they appeal the court's imposition of sanctions under WIS. STAT. § 802.05(1) because of certain allegations in the petition. We conclude the trial court made no legal errors in entering these orders and properly exercised its discretion in all respects. We therefore affirm these orders.

## CLAIM CHALLENGING THE ASSESSMENT

*Background*

¶ 4. This dispute originates in a conflict between the Gullicksons and their neighbors concerning a drainage ditch that crosses the Gullickson farm property, carrying water from a wetland on the neighboring farm. The first lawsuit was filed by the neighbors and concluded with an award of damages to the Gullicksons and a direction by the court that additional relief should be determined by the town board under WIS. STAT. § 88.90, which governs the removal of obstructions from natural watercourses.[4] After a hearing on the complaints of both the Gullicksons and their neighbors,

---

[4] WISCONSIN STAT. § 88.90 provides:

**Removal of obstructions from natural watercourses.**
**(1)** Whenever any natural watercourse becomes obstructed so that the natural flow of water along the same is retarded by the negligent action of the owner, occupant or person in charge of the

the town board on January 29, 1992, sent a letter to the Gullicksons determining that there was obstruction in the watercourse consisting of gravel and dirt, and recommending removal of all materials obstructing the free flow of water.[5] The Gullicksons sought certiorari review of that decision as well as the board's allegedly unauthorized "dredg[ing]" of the ditch on April 8, 1992; they did not dispute the board's right to remove the gravel they had placed in the ditch.

¶ 5. The court affirmed the board's decision that the drainage ditch was a natural watercourse within the meaning of WIS. STAT. § 88.90. However, it decided that further development of the record was needed before it could determine whether the board's removal of material besides gravel was authorized by § 88.90. The court therefore remanded for that purpose. Upon remand, the town board issued written findings sup-

land on which the obstruction is located, the owner or occupant of any lands damaged by such obstruction may request the removal thereof by giving notice in writing to such owner, occupant or person in charge of the land on which the obstruction is located.

(2) If the obstruction is not removed within 6 days after receipt of such notice and if the obstruction is located in a village or town, the owner or occupant of the damaged lands may make complaint to the village or town board, filing at the same time a copy of the notice. The village trustees or town supervisors, after viewing the watercourse and upon being satisfied that the complaint is just, shall make recommendations in writing to the owner or occupant of the lands where the obstruction is located, for the removal of such obstruction. If such recommendations are not followed within a reasonable time, the village or town board shall order the obstruction removed. The cost of view and of removal shall be charged and assessed against the lands from which the obstruction was removed and shall be collected as other special assessments are collected.

[5] The board also recommended that the neighbors remove a dam they had constructed.

porting its position that the board was authorized under § 88.90 to remove silt deposits in the ditch. The Gullicksons filed a petition for review by certiorari of those findings, which was dismissed on June 30, 1995, for failure to prosecute. Their motion for reconsideration of that dismissal was denied on September 11, 1995.

¶ 6. On October 23, 1996, the Town sent a notice to the Gullicksons stating:

RE: Drainage Ditch Dispute

Your share of Township Expenses in this matter

| | |
|---|---|
| Town Board | $ 1,185.00 |
| Sun Prairie Drainage | 650.00 |
| Legal Fees | 13,326.31 |
| Due | $15,161.31 |

Please remit by Nov 15, 1996 to avoid this from being placed on your property tax bill as a special charge.

The Gullicksons did not pay this amount.

¶ 7. On June 4, 2001, petitioners filed the petition for a writ of mandamus that began this action. The petition alleged that the Town had, without authority and in violation of WIS. STAT. § 66.60(2) (1995–96),[6] entered on the real estate tax rolls a charge for

---

[6] WISCONSIN STAT. § 66.60(1) and (2) (1995–96) provided:

(1) (a) Except as provided in sub. (6m), as a complete alternative to all other methods provided by law, any city, town or village may, by resolution of its governing body, levy and collect special assessments upon property in a limited and determinable area for special benefits conferred upon such property by any municipal work or improvement; and may provide for the payment of all or any part of the cost of the work or improvement out of the proceeds of such special assessments.

$15,161.31 which, with additional interest was now over $28,000, and that Dane County, the holder of the tax certificate, was proceeding with enforcement and collection. An amended petition expanded on the factual allegations of this claim and added three specific grounds on which this assessment was unlawful: (1) no order was issued as required by WIS. STAT. § 88.90(2); (2) § 88.90(2) does not authorize assessment for legal fees; and (3) the Town did not comply with the requirements for special assessments in WIS. STAT. § 66.60(2) (1995–96).[7]

---

(b) The amount assessed against any property for any work or improvement which does not represent an exercise of the police power shall not exceed the value of the benefits accruing to the property therefrom, and for those representing an exercise of the police power, the assessment shall be upon a reasonable basis as determined by the governing body of the city, town or village.

(2) Prior to the exercise of any powers conferred by this section, the governing body shall declare by preliminary resolution its intention to exercise such powers for a stated municipal purpose. Such resolution shall describe generally the contemplated purpose, the limits of the proposed assessment district, the number of installments in which the special assessments may be paid, or that the number of installments will be determined at the hearing required under sub. (7), and direct the proper municipal officer or employe to make a report thereon. Such resolution may limit the proportion of the cost to be assessed.

The current versions are numbered WIS. STAT. § 66.0703(1)(a) and (b) and (4) (2001–02).

[7] The petition and amended petition also contained a claim for a violation of the open records statute, which was later dismissed by stipulation, and a claim that the town board was unlawfully refusing to enlarge the board, which was dismissed on summary judgment. The latter is not appealed. To the extent these two claims are relevant to the protective order and sanctions that are the subject of this appeal, they are discussed in subsequent sections of this opinion.

¶ 8. Respondents moved to dismiss this claim on the ground that it was time-barred by Wis. Stat. § 893.72, which provides:

> **Actions contesting special assessment**. An action to avoid any special assessment, or taxes levied pursuant to the special assessment, or to restrain the levy of the taxes or the sale of lands for the nonpayment of the taxes, shall be brought within one year from the notice thereof, and not thereafter. This limitation shall cure all defects in the proceedings, and defects of power on the part of the officers making the assessment, except in cases where the lands are not liable to the assessment, or the city, village or town has no power to make any such assessment, or the amount of the assessment has been paid or a redemption made.

Respondents also moved for attorney fees under Wis. Stat. §§ 814.025 and 802.05, asserting that a reasonable attorney should have known that § 893.72 bars the claim and, alternatively, should have known the Town does have authority to make an assessment for legal fees under Wis. Stat. § 88.90(2).[8]

¶ 9. Petitioners moved for summary judgment on their challenge to the assessment based on the three grounds asserted in their amended petition. They argued that under Wis. Stat. § 66.60 (1995–96) legal fees could be included only if attributable to the work on the ditch, not for defending against the Gullicksons' challenge to the assessment. Petitioners also argued that Wis. Stat. § 893.72 did not bar the claim because it did not apply if the Town had no power to make the assessment, and the Town had exceeded its power by

---

[8] Respondents asserted alternative grounds for dismissal and for attorney fees related to those defenses, which the trial court did not rule on.

failing to comply with the requirements for special assessments under § 66.60(1) and (5) (1995–96).

¶ 10. The trial court treated respondents' motion as one for summary judgment, and granted it. The court concluded that Wis. Stat. § 893.72 barred the claim and that petitioners' arguments to the contrary were frivolous. Petitioners moved the court for reconsideration of the decision on frivolousness, and the court decided this motion was frivolous. The court awarded attorney fees to the Town's attorneys under Wis. Stat. § 814.025 for their work defending against the claim and opposing the reconsideration motion, for a total of $7,847. The court apportioned 70% of the fees to petitioners' counsel, Attorney Jim Schernecker, and 15% of the fees to each of the petitioners, concluding that Attorney Schernecker was primarily responsible for bringing the claim and continuing it.

*Discussion*

¶ 11. The first issue we address is whether Wis. Stat. § 893.72 bars petitioners' challenge to the Town's assessment of the costs of removal of the gravel and dirt and the legal fees. When we review a summary judgment, we apply the same methodology as the trial court, and we consider the issues de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). The remedy is appropriate in cases where there is no material factual dispute and the moving party is entitled to judgment as a matter of law. *Germanotta v. Nat'l Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733 (Ct. App. 1984).

¶ 12. On this first issue, there are no material factual disputes. Resolution of the legal questions requires construction of WIS. STAT. § 893.72 and other statutes. When we interpret and apply statutes, our aim is to discern the intent of the legislature, and we look first to the language of the statute. *McEvoy v. Group Health Coop.*, 213 Wis. 2d 507, 528, 570 N.W.2d 397 (1997). If the language clearly and unambiguously sets forth the legislative intent, we apply that language to the facts at hand. *Reyes v. Greatway Ins. Co.*, 227 Wis. 2d 357, 364–65, 597 N.W.2d 687 (1999). Our review on issues of statutory construction is de novo. *Id.*

¶ 13. Before examining WIS. STAT. § 893.72, we consider petitioners' contention that the costs assessed by the Town are a special assessment under WIS. STAT. § 66.60(1) and (2) (1995–96). We conclude they are not. Section 66.60(1) and (2) (1995–96) authorize a municipality to act by resolution of its governing body to "levy, and collect special assessments upon property in a limited and determinable area for special benefits conferred upon such property by any municipal work or improvement"; prior to exercising these powers, the governing body must declare by preliminary resolution its intention to exercise those powers, stating, among other information, the municipal purpose and the limits of the district. It is evident from the prior court decisions concerning the drainage ditch that the Town did not act under § 66.60(1) and (2) (1995–96), but rather proceeded under WIS. STAT. § 88.90 in determining that there was obstruction in the watercourse, recommending removal of all materials obstructing the free flow of water, and removing the material. When a town acts under § 88.90(2) to remove obstructions, "the cost of

view and of removal shall be charged and assessed against the lands from which the obstruction was removed and shall be collected as other special assessments are collected." Section 88.90(2). The collection of special assessments is addressed in § 66.60(15) (1995–96), which provides that special assessments levied under § 66.60 (1995–96) become a lien on the property and a delinquent tax against the property if not paid by the date specified.[9]

¶ 14. The intent of the legislature is plainly conveyed by the language of these statutes. If a municipality charges and assesses costs that are authorized under WIS. STAT. § 88.90, it may collect them in the same manner it collects special assessments under WIS. STAT. § 66.60(15) (1995–96). However, the municipality charges and assesses those costs under the authority granted in § 88.90, not § 66.60(1) and (2) (1995–96). It

---

[9] WISCONSIN STAT. § 66.60(15) (1995–96) provides:

> Every special assessment levied under this section shall be a lien on the property against which it is levied on behalf of the municipality levying same or the owner of any certificate, bond or other document issued by public authority, evidencing ownership of or any interest in such special assessment, from the date of the determination of such assessment by the governing body. The governing body shall provide for the collection of such assessments and may establish penalties for payment after the due date. The governing body shall provide that all assessments or installments thereof which are not paid by the date specified shall be extended upon the tax roll as a delinquent tax against the property and all proceedings in relation to the collection, return and sale of property for delinquent real estate taxes shall apply to such special assessment, except as otherwise provided by statute.

The current version is numbered WIS. STAT. § 66.0703(13).

therefore need not comply with the requirements for special assessments contained in those subsections.[10]

¶ 15. We turn now to the construction of Wis. Stat. § 893.72. The parties on appeal renew the arguments made in the trial court. Petitioners contend the one-year statute of limitations in § 893.72 does not bar their claim because the costs were imposed in violation of applicable statutory requirements and therefore any resulting assessment was void. The Town responds that the statute is a complete bar to all challenges on whatever grounds. They contend that under the first sentence, one year is the deadline for contesting any assessment, and the second sentence does not create an exception to that, but simply validates any assessment that has not been challenged within one year.

¶ 16. We conclude that *Milwaukee Elec. Ry & Light Co. v. Village of Shorewood*, 181 Wis. 312, 193 N.W. 94 (1923), controls this issue, and under that case the one-year bar does not apply if the Town did not have the power to make the assessment. In *Milwaukee Elec.*, the property owner had not paid an assessment levied on its property by a village, and the property was sold for delinquent taxes to the county. *Id.* at 313. The court concluded that the statute under which the village had acted was unconstitutional because it authorized a village to assess property without an actual benefit to the property. *Id.* at 317–18. It then addressed the defendant's contention that the action challenging the assessment was barred by the predecessor to Wis. Stat.

---

[10] Although we conclude that the costs the Town imposed were not special assessments under Wis. Stat. § 66.60(1) and (2) (1995–96), we use the term "assessment" in this opinion to mean more generally the act of imposing costs on property owners that are levied on their property.

§ 893.72, which contained a nine-month limitation rather than a one-year limitation in the first sentence and a second sentence that was identical in all pertinent respects to the present § 893.72.[11] *Id.* at 320. The court stated:

> [T]he action not having been commenced within a period of nine months thereafter, plaintiff's action is barred, unless it comes within one of the three exceptions specified in the statute; and inasmuch as [the other two exceptions do not apply], the only question open under this statute is the one involving the power of the municipality to make such assessment. This question has already been determined by what has heretofore been said.

*Milwaukee Elec.* at 320–21. Because the statute under which the municipality acted was unconstitutional, the municipality did not have the power to make the assessment, and the statute was not a bar. *Id.* at 321. The property owner was therefore entitled to the equitable relief it sought—cancellation of the assessment, annulment of the tax certificates, and clearing title to the property. *Id.* at 313–14, 321.

¶ 17. Thus, under the court's construction of the statute in *Milwaukee Elec.*, the second sentence of Wis.

---

[11] WISCONSIN STAT. § 925—197 (1917) provided:

> Every action or proceeding to avoid any of the special assessments or taxes levied pursuant to the same, or to restrain the levy of such taxes or the sale of lands for the nonpayment of such taxes, shall be brought within nine months from the end of the period of thirty days limited by the city improvement notice provided for by section 925—191, and not thereafter. This limitation shall cure all defects in the proceedings, and defects of power on the part of the officers making the assessment, except in cases where the lands are not liable to the assessment, or the city has no power to make any such assessment, or the amount of the assessment has been paid or a redemption made.

STAT. § 893.72 does provide exceptions to the statute of limitations in the first sentence, contrary to the construction urged by the Town. The next question to be resolved, therefore, is whether the exception for the "city, village or town [having] no power to make any such assessment" applies in this case.

¶ 18. Petitioners contend the Town did not have the authority to make the challenged assessment because the Town failed to comply with certain statutory procedures: (1) it did not issue an order as required by WIS. STAT. § 88.90(2) when there is no compliance with the recommendation; and (2) it did not issue a report as required by WIS. STAT. § 66.60(2) (1995–96). We have already concluded that the Town did not act under the authority of § 66.60(1) and (2) (1995–96) and therefore the Town was not obligated to comply with those subsections. With respect to § 88.90(2), the failure to issue an order, assuming without deciding that the Town was required to do so and did not, is a procedural deficiency. Under the plain language of WIS. STAT. § 893.72, the one-year limitation "cures all defects in the proceedings." Therefore, the Gullicksons' challenge to the assessment on the ground that the town board failed to issue an order under § 88.90(2) is barred by § 893.72.

■

¶ 19. We agree with the trial court and the Town that *Thomas v. City of Waukesha*, 19 Wis. 2d 243, 120 N.W.2d 58 (1963), and *Green Tree Estates, Inc. v. Furstenberg*, 21 Wis. 2d 193, 124 N.W.2d 90 (1963), do not provide authority for the petitioners' position. In *Thomas*, the court addressed the issue whether the city, by proceeding under WIS. STAT. § 66.60 (1959–60) regarding a street improvement without filing a statement required by that section for the exercise of its

police powers, could now make an assessment for the improvement under its police power. 19 Wis. 2d at 248. The court held the city was estopped from doing so, because the steps in § 66.60 (1959–60) "are jurisdictional and failure to conform to the procedural steps of the statutes is fatal to the exercise of the police power," *id.* at 250; as a result, the assessment was "null and void." *Id.* at 251. *Thomas* did not address WIS. STAT. § 893.72, because the challenge was filed as an appeal under § 66.60(12) (1959–60), *id.* at 244, presumably within the time limit of that section.[12] Therefore, there was no need for the court to distinguish between "a defect in the proceeding" and an assessment that a municipality "has no power to make" as those terms are used in § 893.72. *Green Tree Estates* relies on language quoted in *Thomas* on the need for compliance with statutory requirements in order for an assessment to be valid, but the issue presented there is even farther factually from this case—whether a developer that voluntarily undertakes improvements the municipality could have assessed against the property owner can collect the cost from the owner based on subrogation to the municipality's right to collect. *Green Tree Estates, Inc.*, 21 Wis. 2d at 196–98.

¶ 20. Although we conclude that failure to follow the statutory procedural requirements of WIS. STAT. § 88.90 plainly does not serve to avoid the one-year limitation in WIS. STAT. § 893.72, we reach a different conclusion with respect to petitioners' objection to the assessment of legal fees. Petitioners contend that neither § 88.90 nor WIS. STAT. § 66.60(5) (1995–96) autho-

---

[12] The current version of WIS. STAT. § 66.60(12) (1959–60) is numbered WIS. STAT. § 66.0703(12).

rize the Town to impose the legal fees the Town incurred in defending against the actions the Gullicksons filed. The Town counters that it acted under its authority to impose special charges under § 66.60(16) (1995–96), and the charges authorized under that subsection may include legal fees.[13] This issue, we conclude, presents the question whether the Town had the power to make an assessment for legal fees incurred in litigation, and we are satisfied that it did not have that power.

¶ 21. At the outset of our discussion on this issue, we observe that shortly before the Town filed its responsive brief on appeal, this court issued *Bender v. Town of Kronenwetter*, 2002 WI App 284, 258 Wis. 2d 321, 654 N.W.2d 57, which held WIS. STAT. § 66.60(5) (1995–96) did not authorize the inclusion of costs and litigation fees. Section 66.60(5) (1995–96), now WIS. STAT. § 66.0703(2), provides:

> The cost of any work or improvement to be paid in whole or in part by special assessment on property may include the direct and indirect cost thereof, the damages occasioned thereby, the interest on bonds or notes issued in anticipation of the collection of the assessments, a reasonable charge for the services of the administrative staff of the city, town or village *and the cost of any architectural, engineering and legal services, and any other item of direct or indirect cost which may reasonably be attributed to the proposed work or improvement.*

---

[13] The Town does not dispute the petitioners' assertion that the legal fees were incurred in defending against the Gullicksons' challenges to the Town's removal of materials from the ditch. We therefore take this as a concession. *See State ex rel. Sahagian v. Young*, 141 Wis. 2d 495, 500, 415 N.W.2d 568 (Ct. App. 1987).

(Emphasis added.) We concluded in *Bender* that the emphasized language referred to legal expenses in establishing the project but not legal expenses incurred by the Town when a special assessment is appealed: the latter legal expenses, we concluded, "are not reasonably attributed to the work or improvement. They do not aid in its creation or development . . . [but] are instead attributed to an appeal from the special assessment." *Bender*, 2002 WI App 284 at ¶ 16. Because we have concluded in this case that the town board was not proceeding under § 66.60(1) and (2) (1995–96), § 66.60(5) (1995–96) does not define what is included in authorized costs in this case. However, we consider our analysis in *Bender* to be helpful here.

¶ 22. Under WIS. STAT. § 88.90(2), the town board is authorized to charge, assess, and collect "the cost of view and removal." Because this provision, unlike WIS. STAT. § 66.60(5) (1995–96), does not refer to "legal services" at all, the question arises whether any legal services may be considered in "the cost of view and removal." We need not answer that broad question, however, because we conclude this statutory language does not include the cost of legal services incurred by the Town in defending against the Gullicksons' challenges to the Town's removal of materials from the ditch. Such legal services were rendered after the removal had taken place, they were not incurred in carrying out the viewing or removal, and we can see no reasonable construction of the statutory language that would include the cost of those legal services in "the cost of view and removal."

¶ 23. The Town relies on WIS. STAT. § 66.60(16) (1995–96), which governs special charges, as the source of its authority to make an assessment for the legal

fees.[14] Section 66.60(16)(a) (1995–96) authorizes a municipality to impose on the property served

> special charges for current services rendered ... by allocating all or part of the cost to the property served. Such may include, without limitation because of enumeration, snow and ice removal, weed elimination, street sprinkling, oiling and tarring, repair of sidewalks or curb and gutter, garbage and refuse disposal, storm water management, including construction of storm water management facilities, and tree care.

The Town contends that courts have construed this provision broadly and a broad construction includes the legal fees it assessed on the Gullicksons' property. We disagree.

¶ 24. Beginning with the language of the statute, we conclude it cannot reasonably be construed to include the legal fees the Town incurred in defending against the Gullicksons' challenges to the removal of the materials and the assessment of those costs. The legal services those fees paid for did not "serve" the property, since they did not facilitate carrying out the view and the removal of materials from the ditch.

¶ 25. The cases on which the Town relies do not suggest otherwise: *See Grace Episcopal Church v. City*

---

[14] Since we have already concluded that the Town had the authority under WIS. STAT. § 88.90 to charge and assess the cost of view and removal and collect as other special assessments are collected, we are uncertain why the Town relies on WIS. STAT. § 66.60(16) (1995–96) to authorize its actions. Neither party addresses the relationship between § 88.90 and § 66.60(16) (1995–96). For purposes of discussion, we assume without deciding that § 66.60(16) may be applicable when a municipality has proceeded under § 88.90. The current version of § 66.60(16) (1995–96) is numbered WIS. STAT. § 66.0627.

*of Madison*, 129 Wis. 2d 331, 385 N.W.2d 200 (Ct. App. 1986) (maintenance costs of a city shopping and pedestrian area may be imposed as special charges against a group of property owners; Wis. Stat. § 66.60(16) (1995–96) is not limited to services provided on an isolated basis to individual property); *Laskaris v. City of Wisconsin Dells, Inc.*, 131 Wis. 2d 525, 389 N.W.2d 67 (Ct. App. 1986) (delinquent electric bills due a municipal utility may be imposed as special charges; § 66.60(16) (1995–96) is not limited to services of the types listed, that is, maintenance services).[15] In addition, our own research has uncovered no case that would support the Town's construction of § 66.60(16) (1995–96).

¶ 26. Because neither Wis. Stat. § 88.90(2) nor Wis. Stat. § 66.60(16) (1995–96) authorizes the Town to assess the legal fees, and the Town has not provided any other authority for doing so, we conclude the Town was without power to do so within the meaning of Wis. Stat.

---

[15] The Town also cites *Town of Janesville v. Rock County*, 153 Wis. 2d 538, 546, 451 N.W.2d 436 (Ct. App. 1989), because there we stated, as a preface to discussing prior cases under Wis. Stat. § 66.60(16) (1995–96): "Generally, we have interpreted sec. 66.60(16)(a) quite broadly." However, we then concluded that the statute did not include charges for fire protection services, because the "language limits the town to charging only for services actually provided and not for services that may be available but not utilized." *Id.* at 546. We observe in addition that in *Grace Episcopal Church*, 129 Wis. 2d at 336, we acknowledged that "the statute must be strictly construed," before going on to reject the limitation there proposed. While our comments on broad construction versus strict construction in these two cases may appear inconsistent, our approach in both cases was to consider the language of the statute, which we do in this case as well.

§ 893.72. Therefore, the one-year statute of limitations does not bar petitioners' claim that the Town wrongfully assessed the legal fees. However, that limitation, as we have explained above, does bar the claim that the other costs assessed were invalid. Accordingly we reverse the trial court's dismissal of the claim insofar as it challenged the assessment of the legal fees.[16]

---

[16] One of the Town's arguments supporting WIS. STAT. § 893.72 as a complete bar is that petitioners have not identified an alternative statute of limitations. However, a statute of limitations is a defense; and petitioners need only defeat the statute the Town raises as a bar; they need not identify a statute of limitations that allows their claim. The Town also argues that it would be unreasonable if petitioners could bring their claim at any time. However, the fact that § 893.72 does not apply if the Town does not have power to make an assessment, does not necessarily mean that no other statute or common law doctrine limits the time within a challenge to such an assessment may be brought.

The Town also makes a brief argument as an alternative to WIS. STAT. § 893.72, asserting that petitioners had to pay the tax first and then pursue a claim for a refund. The only authority they cite is WIS. STAT. § 74.35, which addresses recovery of unlawful taxes and thus implicitly assumes payment has been made; however, nothing in the statute suggests that one may not challenge an allegedly unlawful tax without first paying the tax. Moreover, "unlawful" is defined in § 74.35(1) as a "general property tax with respect to which one or more errors specified in s. 74.33(1)(a) to (f) were made." It is not apparent that the tax on the Gullicksons' property resulting from the assessment for legal fees meets this definition, and the Town does not explain why it does. Accordingly, we do not address this argument further.

*Attorney Fees for Assessment Claim and Reconsideration Motion*

¶ 27. The trial court concluded that petitioners' claim challenging the assessment was frivolous under WIS. STAT. § 814.025 because their arguments against the one-year statute of limitations in WIS. STAT. § 893.72 were frivolous. An action is frivolous under § 814.025(3)(b) when a party or attorney "knew, or should have known, that the action . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law." In reaching its conclusion, the court considered two of the arguments petitioners presented—that the entire assessment was void because the Town did not comply with statutory requirements and because fraud was involved. The court did not consider—either in granting summary judgment for the Town or in awarding attorney fees under § 814.025—the argument we have addressed above: that the Town lacked the power to assess the legal fees and therefore the one-year bar did not apply to the assessment of the legal fees. We do not fault the trial court, because petitioners did not give this argument the prominence or the development it deserved. We are persuaded, nonetheless, that petitioners did present this argument in the trial court in a manner sufficient to avoid waiver, and we have decided that they are correct on this argument. It follows that the claim insofar as it challenged the assessment of legal fees was not frivolous on the ground that it was barred

by § 893.72. The court's award of $5184.25 to the Town's attorney in defending against this claim must therefore be reversed.[17]

¶ 28. The trial court also concluded that petitioners' motion for reconsideration of its decision on frivolousness was frivolous, and it awarded $2,662.75 in attorney fees for work in responding to this motion. Inexplicably, in this motion petitioners elaborated further on the two arguments the court had decided were frivolous and did not bring to the trial court's attention the meritorious argument that we have decided in petitioners' favor on appeal, which the court had not addressed. The court relied on WIS. STAT. § 814.025 in awarding fees for this motion, but since that statute applies only to actions, *see* footnote 17, we analyze the court's order under WIS. STAT. § 802.05.

¶ 29. WISCONSIN STAT. § 802.05(1) provides that a person signing a motion makes three warranties, one of

---

[17] We have considered whether the trial court has the authority under WIS. STAT. § 814.025 to award attorney fees only for work performed by the Town's attorney in responding to the two arguments that it determined were frivolous, even though the petitioners have succeeded in this court on another argument. However, in *Gagnow v. Haase*, 149 Wis. 2d 542, 546–47, 439 N.W.2d 593 (Ct. App. 1989), we held that § 814.025 applies only when the action is frivolous and does not apply to the tactics of an attorney procedure in a nonfrivolous action. We recognize that we have also, inconsistently and without referring to *Gagnow*, rejected the argument that § 814.025 applies only if an action is frivolous and have upheld its application to positions taken by one party during a divorce action. *Gardner v. Gardner*, 190 Wis. 2d 216, 249–50, 527 N.W.2d 701 (Ct. App. 1994). However, since under *Cook v. Cook,* 208 Wis. 2d 166, 560 N.W.2d 240 (1997), we do not have the authority to overrule our decisions, we conclude we must follow *Gagnow*.

344

which is that the signer certifies that he or she has conducted a reasonable inquiry and that the paper is warranted by existing law or a good faith argument for a change in law. *Riley v. Isaacson*, 156 Wis. 2d 249, 256, 456 N.W.2d 619 (Ct. App. 1990).[18] Although this court and the supreme court have stated that the review of a trial court's decision under § 802.05 is deferential, *id.*, *Jandrt v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 548, 597 N.W.2d 744 (1999), those cases both involved the issue of the reasonableness of attorneys' factual investigations. The issue here is whether the arguments petitioners made in their reconsideration motion and accompanying brief were warranted by existing law or a good faith argument for a change in the law, and that presents a legal question. We will therefore review this issue de novo. We conclude the trial court correctly decided that the arguments in the reconsideration motion did not meet the requisite standard.

¶ 30. In their brief in support of their reconsideration motion, petitioners acknowledged that *Thomas* held only that an assessment was void because it did not comply with all the statutory requirements and did not address the effect of that on the statute of limitations. However, they relied on *Friendship Village of Greater*

---

[18] First, the person who signs a pleading, motion or other paper certifies that the paper was not interposed for any improper purpose. Second, the signer warrants that to his or her best "knowledge, information and belief formed after reasonable inquiry" the paper is "well grounded in fact." Third, the signer also certifies that he or she has conducted a reasonable inquiry and that the paper is warranted by existing law or a good faith argument for a change in it.

*Riley v. Isaacson*, 156 Wis. 2d 249, 256, 456 N.W.2d 619 (Ct. App. 1990).

*Milwaukee, Inc. v. City of Milwaukee*, 181 Wis. 2d 207, 511 N.W.2d 345, and *Gilbert v. Wisconsin Department of Revenue*, 2001 WI App 153, 246 Wis. 2d 734, 633 N.W.2d 218, for authority that when an assessment is "void *ab initio*," there is nothing for the statute of limitations to act upon and thus it does not apply. As we have already noted, *Thomas* did not address WIS. STAT. § 893.72, and, therefore, its conclusion that the assessment there was void because of a failure to follow a statutory procedure does not support the argument that § 893.72 does not apply. This is particularly true because under the plain language of § 893.72, the one-year limitation cures "all defects in the proceedings." A reasonable attorney should have understood that there is no legal basis for arguing that the one-year limitation does not apply when the municipality failed to follow statutory procedural requirements, as distinct from when the municipality did not have the power to make the assessment. A reasonable attorney should have also understood that the requirements of issuing an order under WIS. STAT. § 88.90(2) and a report under WIS. STAT. § 66.60(3) (1995–96) are procedural requirements, and, therefore, even if the Town should have complied with those requirements and did not, those were "defects in the proceedings" that were cured after one year and could not thereafter be the basis for a challenge.

¶ 31. *Friendship Village* also does not provide a legal basis for petitioners' argument. *Friendship Village* concerned the issue of whether certain property was statutorily exempt from general property taxes, and the court rejected the municipality's argument that the exclusive remedy for the property owner was to pay the tax and seek a refund under WIS. STAT. § 74.35. 181 Wis. 2d at 216. The court relied on earlier cases holding that when the dispute is whether the property is exempt

from taxation, as opposed to whether the municipalities complied with statutory requirements in levying the taxes, compliance with the statutes of limitations in WIS. STAT. chs. 74 and 75 is not required because the municipality had no jurisdiction to levy a tax. *Family Hosp. Nursing Home, Inc. v. City of Milwaukee*, 78 Wis. 2d 312, 324–26, 254 N.W.2d 268 (1977); *Trustees of Clinton Lodge v. Rock County*, 224 Wis. 168, 170, 272 N.W. 5 (1937). These cases are all consistent with the exclusion in WIS. STAT. § 893.72 of situations in which the municipality "has no power to make any such assessment," but a reasonable attorney should have known they do not provide a legal basis for argument that the Town was without the power to make the assessment against the Gullicksons' property. First, the Gullicksons' property is not exempt from taxation under any statutory provision, and, second, these cases make clear that the statutes of limitations do apply when the challenges are to procedural deficiencies in levying the tax. We also observe that since *Friendship Village* was decided, the legislature enacted § 74.35(2m), 1997 Wis. Act 237, § 311m, which to a large extent overrules *Friendship Village*.[19]

¶ 32. Finally, this court in *Gilbert* expressly rejected the circuit court holding that the statute of limitations in WIS. STAT. § 71.75 concerning refunds of income taxes does not apply when the statute under which the person was taxed is unconstitutional. 2001 WI App 153 at ¶ 14. An attorney making a reasonable

---

[19] WISCONSIN STAT. § 74.35(2m) provides:

(2m) EXCLUSIVE PROCEDURE. A claim that property is exempt, other than a claim that property is exempt under s. 70.11 (21) (a) or (27), may be made only in an action under this section. Such a claim may not be made by means of an action under s. 74.33 or an action for a declaratory judgment under s. 806.04.

347

inquiry would have read the entire paragraph, not simply the rejected holding of the circuit court, and understood that this case does not provide a legal basis for petitioners' argument that WIS. STAT. § 893.72 is not a bar.

¶ 33. The second basis for the reconsideration motion was petitioners' contention that the court erred in concluding that there was no "legal fraud" alleged in this case and that their reliance on *Marine National Exchange Bank of Milwaukee v. City of Milwaukee*, 246 Wis. 1, 8, 16 N.W.2d 381 (1944), was frivolous. They asserted that the allegation in their petition that there was no "determination that the Gullickson property benefited in any way from the dredging or digging·in the ditch . . ." brought this case within *Marine Nat'l Exch. Bank*.

¶ 34. In *Marine Nat'l Exch. Bank*, the complaint alleged that the city had failed to oversee construction of a dock wall, for which the property owner was assessed and had paid, and the work was so defective that the dock wall was useless, constituting a fraud upon the property holder. 246 Wis. at 4–5. The court there concluded that the applicable statute of limitations was the one for relief on the ground of fraud, and the cause of action did not accrue until the fraud was discovered. *Id.* at 10–11. The court observed that the property holder could not have challenged the assessment because the wrong did not occur until after the assessment was made, and the property owner brought the action promptly once it discovered the defects. *Id.* at 9.

¶ 35. We agree with the trial court that a reasonable attorney should have known that the allegation quoted from the petition does not make *Marine Nat'l Exch. Bank* applicable under any reasonable view of

348

that case. The point of *Marine Nat'l Exch. Bank* is that the property owner could not have brought the action sooner because it was challenging the deficient work on the improvement, not the authority of the municipality to assess and collect for the improvement. There is no allegation in this petition or amended petition that petitioners had only recently discovered a deficiency in the work the Town performed in April 1992. A reasonable attorney would have understood that *Marine Nat'l Exch. Bank* has no bearing on this case and would not have asked the court to reconsider that ruling.

¶ 36. Since the arguments petitioners presented in their motion for reconsideration and brief in support were not warranted by existing law after a reasonable inquiry, and since petitioners presented no comprehensible argument for an extension of existing law, the trial court had the discretion to impose an appropriate sanction. WIS. STAT. § 802.05(1)(a). Reasonable attorney fees incurred because of the filing of the motion are specifically authorized. *Id.* We conclude the trial court properly exercised its discretion in imposing reasonable attorney fees for this motion. The court had already explained in a written decision why the two arguments were lacking in legal merit and were frivolous. Petitioners' repetition of those arguments with citations to cases even farther afield than those already rejected by the court made attorney fees an appropriate sanction.

## PROTECTIVE ORDER AND RELATED ATTORNEY FEES AND SANCTIONS

*Background*

¶ 37. While the Town's motion to dismiss was pending, the Town moved for a protective order that petitioners' counsel, Attorney Schernecker, refrain from

having contact with the Wisconsin Mutual Insurance Company, the Town's insurer, unless authorized by Attorney Jardine, who was the attorney hired by the insurance company to provide a defense for the Town on certain claims. The motion also sought an order that Attorney Schernecker refrain from interfering with the Town's relationship with its employees. The grounds asserted were that Attorney Schernecker, without disclosing he was petitioners' attorney, had contacted an employee of Wisconsin Mutual to inquire whether the company would provide representation to a Town employee who was to be deposed in this action.

¶ 38. At the hearing on the motion held on October 30, 2001, the court heard argument, considered affidavits, and allowed Attorney Schernecker to explain what he did and why. According to Attorney Schernecker's affidavit and statements at the hearing, he knew Steve Breunig, a road patrolman for the Town, and Breunig told him he was going to be subpoenaed to testify in this case. Attorney Schernecker was concerned that deposition testimony of another witness regarding petitioners' open records claim reflected adversely on Breunig. Attorney Schernecker agreed he had called an employee of Wisconsin Mutual about representation for Breunig, but stated he did not discuss the lawsuit. Attorney Schernecker initially contended that SCR 20:4.2 did not apply because Wisconsin Mutual was not a party.[20] However, after the court

---

[20] SUPREME COURT RULE 20:4.2 provides:

**Communication with person represented by counsel.** In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

pointed out the language from the comment—"This rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question"—Attorney Schernecker stated: "Well, for purposes of this hearing, I will concede that issue. I will concede that. I am not agreeing, but I will concede that." Attorney Schernecker also argued that Breunig was not a managerial employee for the Town, which the Town's attorney disputed.

¶ 39. The trial court found that Attorney Schernecker had previously acknowledged in a letter that Attorney Jardine was representing Wisconsin Mutual, and therefore Attorney Schernecker knew that fact at the time he made the call to the insurance company concerning Breunig. The court also found that Attorney Schernecker made the call because he was concerned that Breunig have counsel in this matter and that the subject matter of the call—whether the insurance company would provide representation to Breunig at a deposition in this action—was related to the subject matter of this action. The court concluded that Attorney Schernecker violated SCR 20:4.2. It entered a protective order prohibiting him from having direct contact with Wisconsin Mutual, the respondent town officials, and the town treasurer about the subject matter of the lawsuit. The court also included Breunig and two other persons connected with the Town in the protective order, but stated that if Attorney Schernecker presented authority to the effect that these persons were not represented by counsel in their official capacity, the court would reconsider that portion of its order.

¶ 40. The court concluded that it was appropriate to award Attorney Hazelbaker, the Town's attorney, and Attorney Jardine their attorney fees for the motion,

observing that Attorney Schernecker could have con-
ceded the issue when the protective order was re-
quested. The court stated that petitioners would have
one week to respond after the two attorneys submitted
their fee statements.

¶ 41. Attorney Jardine filed an itemization of his
fees on November 1, 2001, and Attorney Hazelbaker
filed an itemization of his on November 7, 2001. On
November 13, the court entered an order stating that
no objection to the fees requested by Attorney Jardine
had been received within one week and directing that
petitioners pay his attorney fees in the amount of
$1,452. On that same date, petitioners filed a motion for
reconsideration of the protective order, stating that a
brief and affidavit would be filed after petitioners
received the transcript, which they had ordered. Peti-
tioners also filed an objection to the court's entering the
order that had been drafted by Attorney Hazelbaker at
the court's instruction. This objection contended,
among other points, that there was no legal basis for
awarding attorney fees, but it provided no analysis
supporting that contention. A week later the court
received a letter from Attorney Schernecker asking the
court to withdraw the order on Attorney Jardine's
attorney fees, both because one week from October 30,
2001, as computed under Wis. Stat. § 801.15, did not
end until November 14, 2001, and because of the
motion for reconsideration. Petitioners never did
present authority for the court's reconsideration of the
inclusion of Breunig and two others in the protective
order.

¶ 42. On November 27, 2001, the court entered a
written order summarizing its findings, conclusions
and orders of October 30, and also ordering petitioners
and Attorney Schernecker to pay the attorney fees

352

incurred by the Town, $665 for Attorney Hazelbaker and $1452 for Attorney Jardine. On that same date, the court entered an order concluding that petitioners' position that there was no legal basis to award attorney fees was frivolous, and that the motion for reconsideration did not comply with WIS. STAT. § 802.01(2)(a) because it did not state the ground for the motion. The court ordered that Attorney Schernecker, not petitioners, pay each opposing counsel $600 on each of these filings.

*Discussion*

¶ 43. A trial court has the authority under WIS. STAT. § 804.01(3)(a) to issue a protective order for good cause. We review such an order to determine if the trial court properly exercised its discretion, and we affirm if the court examined the relevant facts of record, applied the correct law and made a reasonable decision. *State v. Beloit Concrete Stone Co.*, 103 Wis. 2d 506, 511, 309 N.W.2d 28 (1981). On appeal, petitioners and Attorney Schernecker contend that the court erroneously exercised its discretion in entering the protective order because it made a number of errors of law.

¶ 44. First, petitioners and Attorney Schernecker contend that the prohibition in SCR 20:4.2 to "communication about the subject of the representation with a party the lawyer knows to be represented by another in the matter" applies only to the lawsuit, and Wisconsin Mutual is not a party. However, as we have already noted, Attorney Schernecker conceded this issue in the trial court based on the comment to the rule; thus, if this was error, he invited it. We generally do not review

invited error, and we decline to do so here. *D.N. v. State*, 173 Wis. 2d 343, 372, 497 N.W.2d 141 (Ct. App. 1992).

¶ 45. Second, petitioners and Attorney Schernecker contend that, according to the comments to SCR 20:4.2, in the case of an organization the rule prohibits communications only with persons who have "a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization." SCR 20:4.2 cmt. Petitioners and Attorney Schernecker assert that the Wisconsin Mutual employee he spoke with did not meet these criteria. However, they did not make this argument in the trial court; they asserted only that Breunig did not meet these criteria. As a general rule, we do not address issues raised for the first time on appeal. *County of Columbia v. Bylewski*, 94 Wis. 2d 153, 171, 288 N.W.2d 129 (1980). We decline to do so here.

¶ 46. Third, petitioners and Attorney Schernecker contend that he did not "communicate about the subject of [his] representation [of petitioners] with the Wisconsin Mutual employee." SCR 20:4.2. It is undisputed that Attorney Schernecker was asking about representation for Breunig at a deposition in this litigation because he was concerned that deposition testimony of another witness in this litigation reflected adversely on Breunig. Attorney Schernecker is representing petitioners in this litigation. We agree with the trial court's conclusion that Attorney Schernecker's

telephone call to the Wisconsin Mutual employee was a communication "about the subject of [his] representation" of petitioners.

¶ 47. Petitioners and Attorney Schernecker next contend that the trial court erroneously exercised its discretion in requiring him to pay the Town's attorney fees in bringing the motion because their position was "substantially justified." Wis. Stat. § 804.12(1)(c).[21] We do not agree. Attorney Schernecker conceded that the rule, based on the comment, applied to Wisconsin Mutual even though it was not a party. He could have made this concession as soon as the motion was filed. Attorney Schernecker's concern for Breunig may have been well-intentioned, but that did not justify his contact with the insurance company rather than its attorney and did not justify acting on behalf of Breunig on a matter concerning this litigation, when Breunig was an employee of the town Schernecker was suing. Attorney Schernecker did not present a reasonable basis for opposing the motion for a protective order.

¶ 48. Finally, petitioners and Attorney Schernecker contend the court erroneously exercised its discretion in sanctioning him for the motion for recon-

---

[21] Under Wis. Stat. § 804.01(3)(b), the court may award expenses for motions for protective orders as provided in Wis. Stat. § 804.12(1)(c):

> If the motion is granted, the court shall ... require the party or deponent whose conduct necessitated the motion ... to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

siederation of the protective order and the objection to the court's award of fees under Wis. Stat. § 804.12(1)(c). Neither the motion nor the objection contained an argument, not even an undeveloped one, explaining why the court erred in entering the protective order or in awarding fees under § 804.12(1)(c). This is a complete disregard of all three warranties that Attorney Schernecker made under Wis. Stat. § 802.05 in signing these papers, *see* footnote 18, and the trial court properly exercised its discretion in sanctioning him by ordering him to pay to opposing counsel $600 for each of these filings.

## SANCTIONS UNDER Wis. Stat. § 802.05 FOR ALLEGATIONS IN THE PETITION

¶ 49. The Town also moved for sanctions under Wis. Stat. § 802.05(1) on the ground that paragraph 14 of the petition described events that had not yet occurred on June 3, 2001, the date on which the petition was signed by petitioners in front of a notary and signed by counsel. That paragraph, also contained in the amended petition, provided:

14. Derek J. Robinson, an adult elector, resident and landowner of the Town of Bristol, Dane County, Wisconsin, appeared at the town hall on June 4, 2001 and requested to file his nomination papers to become a candidate for one of the two supervisor offices created by the enlargement of the Board of Supervisors at the annual meeting. At that time he was advised by the clerk of the town and members of the Board of Supervisors of the town, including respondent, Gerald H. Derr, that the Board of Supervisors had not been enlarged as mandated by the ordinance passed at the annual meeting, that there were no additional supervi-

356

sor offices to be filled, that the Board of Supervisors did not intend to enlarge the Board of Supervisors as mandated by the electors at the annual meeting, and that they refused and are still refusing to do so.

¶ 50. Petitioners acknowledged in response to this motion that the events alleged in the above paragraph had not occurred before they and counsel signed the petition on June 3 and filed it on June 4. However, Gullickson averred that, based on prior events, it was "reasonably certain" that Derr would not issue nomination papers to Derek Robinson, and in fact he did not. Attorney Schernecker served the summons and petition on the Town and Gerald Derr during the June 4 meeting.

¶ 51. The trial court concluded that petitioners and Attorney Schernecker violated WIS. STAT. § 802.05 by signing, swearing to (petitioners), and filing a pleading containing facts they knew to be not true at that time. Just as troubling as the violation, in the court's view, was Attorney Schernecker's attempt to defend his actions. As sanctions, the court ordered each petitioner to pay $300 and Attorney Schernecker to pay $600, to be divided between the two opposing counsel. Again, the court determined Attorney Schernecker was more responsible than his clients.

¶ 52. We review this decision for an erroneous exercise of discretion because it involves the warranty that the petition was well-grounded in fact. *Riley*, 156 Wis. 2d at 256. It is not disputed that petitioners and their counsel knew that the events related in paragraph 14 had not occurred on June 3 when they signed the petition, with petitioners swearing the allegations were, true before a notary public, and had not occurred on June 4 when they filed the petition with the court. We conclude the trial court could reasonably decide that

357

this constituted a violation of the obligation to make a reasonable inquiry to insure that their petition was well-grounded in fact. The court could properly reject their rationale that the event did come about as they expected: according to the statute, the time they signed the petition is the time they certified the factual reliability of the petition. The court could also reasonably decide that a sanction was appropriate to impress on petitioners and their counsel that they could not disregard their statutory obligations and the significance of an oath before a notary, simply because it was more convenient to do so. The amount of the sanction imposed was reasonable and appropriate.

## CONCLUSION

¶ 53. In summary, we reverse the judgment insofar as it dismissed the claim challenging the assessment for legal fees and remand for further proceedings on this claim. We also reverse the court's imposition of attorney fees under Wis. Stat. § 814.025 for bringing this claim. We affirm the following: (1) the attorney fees imposed for the frivolous motion for reconsideration of the attorney fees on the assessment claim; (2) the protective order, the attorney fees imposed under Wis. Stat. § 804.12(1)(c), and the attorney fees for the frivolous objection to these and for the related frivolous motion for reconsideration; and (3) the sanction under Wis. Stat. § 802.05 for paragraph 14 of the petition.

¶ 54. Respondents have asked that we impose attorney fees under Wis. Stat. § 809.25(3)(c) because, they assert, this appeal is frivolous. We may impose attorney fees under that section only if the entire appeal is frivolous. *Nichols v. Bennett*, 190 Wis. 2d 360, 365 n.2, 526 N.W.2d 831, 834 (Ct. App. 1994). Because

358

petitioners have prevailed in part on this appeal, the entire appeal is not frivolous. Accordingly, we deny this request.

*By the Court.*—Judgment and order affirmed in part; reversed in part, and cause remanded.

¶ 55. LUNDSTEN, J. *(concurring)*. I write separately because I do not agree with the majority's conclusion that petitioners preserved the one argument which the majority deems worthy: that the Town lacked the power to assess the legal fees and, consequently, the one-year time bar in WIS. STAT. § 893.72 did not apply to the assessment of those legal fees. I join the entire majority opinion with one exception: its conclusion in paragraph 27 that petitioners presented the above argument with sufficient clarity to avoid waiver.

¶ 56. The majority does not fault the trial court for missing the meritorious legal fees argument "because petitioners did not give this argument the prominence or the development it deserved." Majority at ¶ 27. This is an understatement. The trial court can be forgiven for missing the argument because it was completely undeveloped. Indeed, the argument is only recognizable if one already understands the argument and has it in mind. Nothing in the memorandum submitted by petitioners below remotely resembles the majority's own analysis in paragraphs 20 to 26 of its decision. The petitioners merely assert: "Sec. 66.60 allows for inclusion of the cost for legal services in a special assessment only for **proposed** work or improvement." This sentence was not sufficient to apprise the trial court of the meritorious legal fees argument for at least three reasons: (1) the sentence appears under a subheading directing the reader's attention to a different argument; (2) the general reference to WIS. STAT.

359

§ 66.60 is not helpful because that statute covers fully two and one-half pages of statutory text; and (3) the sentence is simply too vague. A like sentence in a subsequent subsection of the memorandum is similarly vague and unhelpful.

¶ 57. It is noteworthy that petitioners filed a motion for reconsideration which omits even an arguable reference to the one meritorious argument. The majority finds it "[i]nexplicabl[e]" that petitioners did not raise this one meritorious argument in their reconsideration motion. Majority at ¶ 28. However, the most obvious explanation for such a glaring omission is that the argument was not knowingly made in the prior memorandum.

¶ 58. Accordingly, in my view, the first time the petitioners raise their one meritorious argument in a recognizable form is on appeal. As such, they have waived their right to review. Nonetheless, the waiver rule is one of judicial administration, and appellate courts have the authority to ignore waiver. *See Olmsted v. Circuit Court*, 2000 WI App 261, ¶ 12, 240 Wis. 2d 197, 622 N.W.2d 29. In this case, I would ignore waiver because the correct analysis shows that WIS. STAT. § 893.72 does not apply to the assessment of legal fees and a published decision on this topic is desirable.

¶ 59. Therefore, I respectfully concur.